Randall Schmitz(ISB #5600)
SKAUG LAW, P.C.
1226 E. Karcher Road
Nampa, Idaho 83687
Telephone: (208) 466-0030
Facsimile: (208) 466-8903
Randy@skauglaw.com

Attorney for Plaintiff,

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| THOMAS E. WELSH<br><br>                    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; and DOES I-X<br><br>                    Defendants. | Case No.  1:18-CV-455-REB<br><br>SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL |
|---|---|

COMES NOW Plaintiff, Thomas Welsh, by and through his attorney of record, Randall L. Schmitz, Skaug Law, P.C. and for cause of action against the above-named Defendants, complains and alleges as follows.

**PARTIES, JURISDICTION, AND VENUE**

1. This is a case of medical negligence brought by Plaintiff Thomas E. Welsh (hereinafter "Welsh" or "Plaintiff"). At the time of the conduct alleged herein, and at all times thereafter, Welsh was a resident of McCall, Idaho, and had been honorably discharged from active military service.

2. Defendant United States of America is sued under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et. seq.*, as the representative defendant and real party in interest for the

Boise VA Medical Center of the United States Department of Veterans Affairs and those employed by it to provide healthcare services at said facility. This action involves a claim against the United States, for money damages, for personal injury caused by the negligent and/or wrongful acts or omissions by employees of the government while acting within the scope of their office or employment. Under the laws of the State of Idaho, said healthcare providers would otherwise be liable to the Plaintiff for the medical negligence alleged herein. Federal jurisdiction is therefore proper pursuant to 28 U.S.C. § 1346(b)(1). The location of the conduct alleged is the Boise VA Medical Center in Boise, Idaho, hence venue is proper here pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1402(b). The amount in controversy, exclusive of interest and costs, exceeds $75,000.

3. The individuals employed to provide healthcare services at the Boise VA Medical Center, whose conduct failed to meet the applicable standards of care as to the treatment rendered to Plaintiff Welsh, and who are covered employees under the Federal Tort Claims Act for purposes of this case, are identified as follows, without limitation:

    a.    Dr. Mark Baradziej, and

    b.    Dr. Jeffery Dingman

4. Plaintiff Welsh is ignorant of the true names and capacities of the Defendants sued herein as Does I through X, inclusive, and therefore sue those Defendants by such fictitious names. Plaintiff Welsh is informed and believes, and on that basis alleges, that the Defendants sued herein as Does I through X are in some manner legally culpable for the injuries and damages suffered by the Plaintiff. Plaintiff Welsh will amend this Complaint to allege their true names and capacities when ascertained.

5. Plaintiff Welsh timely presented this claim in writing to the appropriate United States Department of Veterans Affairs claims office. The United States Department of

Veteran Affairs, by and through its Office of Chief Counsel, denied this claim on April 18, 2018, thus this lawsuit is appropriate pursuant to 28 U.S.C. §§ 1346(b) and 2671-2680, *et seq*.

6. Plaintiff Welsh also timely presented this claim to the Idaho Board of Medicine for a prelitigation screening panel pursuant to I.C. §§ 6-1001, *et seq*., thus all conditions precedent to filing a medical negligence claim under Idaho law have been satisfied. The hearing was held on February 4, 2019, and a Report and Recommendation was issued on February 8, 2019.

## FACTUAL ALLEGATIONS

7. Plaintiff Welsh reasserts the allegations contained in the previous paragraphs as if set forth in full herein.

8. In early February 2016, Plaintiff Welsh began experiencing stomach pains. He contacted the VA which authorized him to seek treatment at St. Luke's McCall Medical Center ("St. Luke's McCall") under the Veterans Choice Program.

9. Plaintiff Welsh presented to St. Luke's on February 9, 2016, complaining of epigastric abdominal pain that radiated into his back. He was seen by Jessica Smith, P.A. Mr. Welsh had a remote history of gastric ulcers and reported that the pain was similar. He used Pepto-Bismol for short term relief and reported having melena prior to using the Pepto-Bismol. P.A. Smith diagnosed him with an acute gastric ulcer and prescribed Carafate tablets and Prilosec. She also ordered a Helicobacter Pylori lab and recommended he have an EGD/colonoscopy in the next three months.

10. Plaintiff Welsh continued to experience stomach pain and returned to St. Luke's McCall on February 23, 2016. He was again seen by P.A. Smith. The pain was causing

him to lose sleep. The Helicobacter Pylori test was positive. P.A. Smith diagnosed him with an H. Pylori infection and an ulcer. He was prescribed a triple therapy program.

11. However, on February 29, 2016, Plaintiff Welsh returned to St. Luke's McCall because his stomach pain was getting worse. He was seen by Dr. Patrick O. Kinney. Dr. Kinney noted Plaintiff Welsh's history of DVTs. He had more than 20 prior DVTs, the last one being March 2015. Dr. Kinney also noted that Plaintiff Welsh stopped taking Warfarin because he had a difficult time with titration. Dr. Kinney further indicated that Plaintiff Welsh had a genetic thrombotic predilection and a high risk of recurrent clotting. Dr. Kinney thought it was unusual for Mr. Welsh to be having so much pain a week into treatment. He concluded there was no evidence of a bleeding ulcer. Dr. Kinney tried to get VA approval for a CT scan of the abdomen but, later informed Plaintiff Welsh that the CT request was denied.

12. Plaintiff Welsh returned yet again to St. Luke's McCall on March 4, 2016, complaining of black tarry stools with cramping and crushing pain. He had not eaten much for three days and began vomiting the night before. He had lost seventeen pounds in the last three and a half weeks. St. Luke's McCall recommended he go to the emergency department. Since his only medical coverage was through the VA Veterans Choice Program, Plaintiff Welsh had his son drive him to the Boise VA Medical Center's ("Boise VA") emergency department.

13. At the Boise VA, Plaintiff Welsh reported that the ulcer was "killing" him. His pain was "crushing" and constant. Plaintiff Welsh was seen by Dr. Scott Lossman. Dr. Lossman noted that Plaintiff Welsh had "ulcer" symptoms for three weeks, had been treated at St. Luke's McCall and recently started H Pylori treatment which initially improved his pain, however, yesterday he vomited and had been nauseous all day. He was not eating or

drinking. Plaintiff Welsh's past history was significant for DVTs of the lower extremities, long-term use of anticoagulants which he had discontinued, primary hypercoagulable state, and nevous thrombosis NEC. Dr. Lossman ordered a CT scan of the abdomen and pelvis.

14.  The CT was performed on March 4, 2016, and read by Defendant Dr. Yang at the VHA National Teleradiology Program in Menlo Park, CA. Defendant Dr. Yang reported that "The gallbladder is unremarkable with no evidence of stones, pericholecystic fluid, or gallbladder wall thickening." He also noted "Atherosclerosis of the abdominal aorta and its branches is…" This sentence was left unfinished in the report.

15.  Dr. Lossman concluded there was no surgical finding and enteritis was likely. Plaintiff Welsh was discharged on the same medication regimen previously prescribed.

16.  Three days later, on March 7, 2016, Plaintiff Welsh returned to the Boise VA clinic complaining of 8 out of 10 pain across his abdomen and nausea. Eating increased his pain and nausea, and he was losing more weight. They referred him back to the emergency department.

17.  In the Boise VA emergency department, Plaintiff Welsh was seen by Dr. Jeffrey Dingman. Dr. Dingman reviewed Plaintiff's history. Plaintiff Welsh had been seen at St. Luke's McCall for abdominal pain and started on a course of H Pylori treatment but, his pain was getting worse. Plaintiff Welsh also had an elevated white blood cell count and a CT scan that showed enteritis. Plaintiff Welsh's history was significant for DVTs of the lower extremities, long-term use of anti-coagulants, primary hypercoagulable state, and venous thrombosis NEC. Dr. Dingman's differential diagnosis included "continued enteritis, peptic ulcer, cholelithiasis, cholecystitis, and pancreatitis."

18.  Dr. Dingman's differential diagnosis did not include an occlusion or thrombosis.

19. Dr. Dingman's failure to consider an occlusion or thrombosis in his differential diagnosis was a breach of the applicable standard of healthcare practice.

20. On March 8, 2016, Plaintiff Welsh underwent an ultrasound of his abdomen. The radiologist's impression was "Multiple sludge without cholecystitis."

21. After the ultrasound, Plaintiff Welsh was evaluated at the Boise VA by Dr. Mark Baradziej who recommended a laparoscopic cholecystectomy.

22. On March 10, 2016, Plaintiff Welsh met with Dr. Baradziej again. At this point, Plaintiff Welsh had chronic and worsening abdominal pain for the past couple months. The pain was worse with eating and he had lost about twenty pounds. He was treated for H. Pylori, but his symptoms did not improve. His white blood cell count was elevated at 14,000. A CT scan showed a normal appearing gallbladder, no evidence of stones, no pericholecystic fluid, and no gallbladder wall thickening. An ultrasound showed sludge without cholecystitis. An endoscopy showed no signs of enteritis.

23. Dr. Baradziej diagnosed Plaintiff with a "smoldering low-grade cholecystitis," because he had no other explanation for the pain and elevated WBC count.

24. Dr. Baradziej recommended a cholecystectomy even though he acknowledged "not all of his signs and symptoms are consistent with this diagnosis, so it may not cure him."

25. Dr. Baradziej performed a cholecystectomy and removed Mr. Welsh's gallbladder on March 11, 2016.

26. Given Plaintiff's clinical presentation and diagnostic studies, performing a cholecystectomy was a breach of the applicable standard of healthcare practice.

27. Dr. Baradziej's failure to consider an occlusion or thrombosis in his differential diagnosis was a breach of the applicable standard of healthcare practice.

28. The cholecystectomy did not resolve Plaintiff Welsh's abdominal pain.

29. Instead, on March 16, 2016, Plaintiff Welsh's abdominal pain was out of control and he was vomiting. His abdomen was distended and he had diarrhea.

30. Another CT of Plaintiff's abdomen was performed on March 16, 2016, and read by Zareena Hussain, M.D., also at the VHA National Teleradiology Program in Menlo Park, CA. Dr. Hussain diagnosed Plaintiff Welsh as having a proximal superior mesenteric artery occlusion and a chronic inferior mesenteric artery occlusion, which Dr. Hussain found were also visible on the March 4, 2016, CT scan.

31. Based upon Dr. Hussain's findings, Plaintiff Welsh was given a CT scan of the angio mesenteric arteries on March 17, 2016. This CT was read by Barry Robert, M.D. Dr. Robert also found an occlusion in the proximal superior mesenteric artery which was visible on the March 4, 2016, CT scan. The inferior mesenteric artery was not visible. Dr. Robert further found that Plaintiff's bowels were ischemic in the ileum area.

32. Dr. Baradziej reviewed the CT scans with Dr. Masser and Dr. Cassos at St. Luke's in Boise ("St. Luke's Boise") on March 17, 2016. They compared the recent CT scans with the March 4, 2016, scan and concluded the thrombosis and occlusion were not acute because they were present in early March.

33. Due to the delay in diagnosing the occlusion, intravascular thrombectomy was no longer an option. Instead, urgent transfer to St. Luke's Boise was required for an open thrombectomy.

34. Upon arrival at St. Luke's Boise, the doctors reviewed the prior imaging again and concluded that "it appears the SMA was occluded on a study from 03/04/2016."

35. On March 17, 2016, Plaintiff Welsh underwent emergency vascular surgery at St. Luke's Boise to repair the occluded SMA and removal of ischemic bowel sections.

36. Between March 17 and April 1, 2016, Plaintiff Welsh underwent five surgeries and is now left with only 85cm of small bowels, resulting in short gut syndrome.

37. On April 1, 2016, Plaintiff Welsh was transferred from St. Luke's Boise to the University of Utah for specialty expertise in his complex care. He was discharged from University of Utah on May 2, 2016, and transferred back to the Boise VA Medical Center where they worked on transitioning him to a more regular diet even though he continued to need daily total parenteral nutrition intravenously. After a month, he was sent to a long-term care hospital for 3-4 weeks for physical rehabilitation and wound healing. He was not able to return home to McCall until August 2016.

38. Plaintiff Welsh is still on a very restricted diet. He has chronic diarrhea. He has lost considerable muscle mass and strength. He can no longer operate his business installing and refinishing hardwood floors. He can no longer enjoy an active lifestyle including, but not limited to, hiking, hunting, and camping. Plaintiff Welsh will never again have a normal life or be free of pain and suffering.

## COUNT I

### (Medical Negligence – Boise VA Medical Center)

39. Plaintiff Welsh reasserts the allegations contained in the previous paragraphs as if set forth in full herein.

40. The Boise VA Medical Center and its physicians violated the applicable standards of care and were thereby negligent and reckless. The providers violated the applicable standards of care resulting in a delayed diagnosis of a mesenteric arterial occlusion, ischemic bowels and the removal of 85cm of the Plaintiff's small intestines, and the unnecessary removal of the patient's gallbladder. Without limitation, the providers failed to timely conduct proper testing, failed to properly assess and monitor the patient, failed to

properly read and interpret the CT imaging, failed to conduct a proper diagnosis, failed to timely perform the appropriate surgical intervention, and performed a contra-indicated surgical procedure.

41. The Boise VA Medical Center, through its employees, and itself as an institution, failed to have proper policies and procedures in place, failed to properly train and supervise its employees, and failed to properly staff the patient's case, which conduct is also a violation of the applicable standards of care, is negligent, and is reckless.

42. The medical negligence and reckless misconduct on the part of the Boise VA Medical Center and its employees in failing to meet the applicable standards of healthcare practice was a direct and proximate cause of, and a substantial factor in causing, injury and damages suffered by Plaintiff Welsh, including, without limitation, removal of his gallbladder and 85cm of his small intestines.

43. As a result of the Boise VA Medical Center's negligence and recklessness, Plaintiff Welsh is now an invalid. He suffers ongoing pain and depression. His activities of daily living are compromised and impaired. He has incurred, and will incur, substantial medical bills, therapy bills, home care expenses, and other expenses incurred incident to care and treatment, as well as pain, suffering, permanent disfigurement, mental anguish, and loss of enjoyment of life, past, present, and future.

44. As such, Plaintiff Welsh is entitled to an award of money damages for all allowable general and special damages, in an amount to be proven at trial.

## DEMAND FOR ATTORNEY FEES

45. Plaintiff Welsh reasserts the allegations contained in the previous paragraphs as if set forth in full herein.

46.     As a direct and proximate result of Defendant's negligence and/or recklessness, Plaintiff Welsh has been required to retain the services of Skaug Law, P.C. to represent his interests in this action, and is entitled to reasonable attorney fees and costs pursuant to I.C. §12-121 and Rule 54 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Thomas E. Welsh, prays for judgment against the Defendants as follows:

1.      For a monetary sum to compensate him for all allowable general damages, including, but not limited to, past, present and future physical and mental pain and suffering, anguish, emotional distress, permanent disfigurement and impairment, and loss of enjoyment of life, all in an amount to be proven at trial;

2.      For a monetary sum to compensate him for his special damages consisting of, but not limited to, all past, present, and future medical and related expenses, physical therapy expenses, rehabilitation expenses, travel expenses, and all other life care and incidental expenses, in an amount unknown to Plaintiff at this time but which sum shall be more readily ascertained at the trial of this matter;

3.      For prejudgment interest;

4.      For Plaintiff's reasonable attorney fees and costs incurred in the prosecution of this action, or $10,000 should this matter proceed by default; and

5.      For such other and further relief as this Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Although Plaintiff recognizes that this is an F.T.C.A. case, out of an abundance of caution, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues so triable, if any.

Dated this 15th day of February 2019.

                SKAUG LAW OFFICES, P.C.
                Attorney for Plaintiff


                /S/ Randall Schmitz
                Randall Schmitz